**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:** | **MDL Docket No._____** |
| **FCA US LLC "ROLLAWAY" LITIGATION** | |

**MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF**
**TIMOTHY WEBER FOR CENTRALIZATION OF RELATED ACTIONS IN**
**THE EASTERN DISTRICT OF MICHIGAN PURSUANT TO 28 U.S.C. § 1407**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND FACTS ....................................................................................4

    A.     FCA Equipped at Least 811,586 Vehicles in the United States
          with the Defective Shifter and Failed to Remedy the Known Defect ....................4

    B.     The FCA Rollaway Actions ........................................................................6

III.   ARGUMENT ......................................................................................................7

    A.     Transfer and Centralization is Appropriate Under 28 U.S.C § 1407 ......................7

    B.     The Eastern District of Michigan Is the Ideal Forum
          for Centralization ........................................................................................10

        1.     The Unlawful Conduct Occurred in the Eastern
             District of Michigan ......................................................................10

        2.     Cost and Inconvenience Will Be Minimized in the
             Eastern District of Michigan ........................................................13

        3.     The Eastern District of Michigan Has the Resources,
             Judicial Expertise and Favorable Caseload to Conduct
             Efficient Pretrial Proceedings ......................................................13

IV.    CONCLUSION ................................................................................................15

## I.       INTRODUCTION

Pursuant to 28 U.S.C. § 1407 ("Section 1407") and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiff Timothy Weber ("Plaintiff") respectfully submits this memorandum of law in support of his motion to centralize the six federal actions pending against FCA US LLC ("FCA", "Defendant" or the "Company") related to the Company's fraud, misrepresentations and/or concealment of a known defect in its vehicles equipped with a defective monostable electronic gearshift (the "Defective Shifter") for coordinated or consolidated pretrial proceedings in the Eastern District of Michigan.[1]   The Eastern District of Michigan is the home district of the *sole* defendant named in each of the FCA Rollaway Actions and will be the center of gravity for evidence and witnesses needed to establish the parties' claims and defenses.   Centralizing the FCA Rollaway Actions in the Eastern District of Michigan will further Section 1407's objectives of promoting convenience and the efficient prosecution of the Actions.

As detailed in the FCA Rollaway Actions, at least 811,586 vehicles sold by FCA in the United States are equipped with the Defective Shifter (the "Defective Vehicles"), which is dangerously defective because of Defendant's failure to include (1) a physical gear position that would clearly notify drivers which gear their vehicle is in; and (2) a safety override function that would automatically put the vehicle in Park when a driver attempts to exit the vehicle when it is in another gear.   This dangerous defect has resulted in hundreds of accidents and vehicle rollaways as a result of drivers not knowing which gear their transmission is in and/or exiting their vehicle without the vehicle in Park.   The sale of the Defective Vehicles caused hundreds of

---

[1] The Schedule of Actions, attached hereto as Exhibit A, includes three actions filed in the Eastern District of Michigan and three other federal actions pending in other federal district courts for which Plaintiff Weber seeks centralization in the Eastern District of Michigan (the "FCA Rollaway Actions" or "Actions").

thousands of owners and lessees to suffer damages, including but not limited to, diminished value of the Defective Vehicles, and has recklessly placed owners, passengers and the public at risk for serious injury or death.

On July 8, 2016, Plaintiff filed a class action[2] against FCA in the Eastern District of Michigan—the federal district where the Company (and sole defendant in each of the FCA Rollaway Actions) is headquartered and where numerous design, engineering, manufacturing, marketing and sales activities related to the Defective Vehicles were conducted.  In addition to Plaintiff's action, there are two other related actions pending in the Eastern District of Michigan and three other federal actions pending in the Central District of California, the Eastern District of New York and the Middle District of Tennessee.  *See* Exhibit A.  The FCA Rollaway Actions have each been filed by owners or lessees of the Defective Vehicles and assert claims on behalf of overlapping nationwide classes of consumers against the exact same defendant.  *See* Exhibit 1, at ¶¶ 2 and 55; Exhibit 2, at ¶¶ 2 and 55; Exhibit 3, at ¶¶ 1 and 102; Exhibit 4, at ¶¶ 4 and 58; Exhibit 5, at ¶¶ 2 and 35; Exhibit 6, at ¶¶ 2 and 35.  All of the pending actions commonly allege that FCA engaged in fraud, misrepresentations and/or omissions by equipping vehicles with the Defective Shifter and concealing the defect from consumers.  *See* Exhibit 1, at ¶¶ 31 and 49; Exhibit 2, at ¶¶ 28, 48 and 75; Exhibit 3, at ¶¶ 13 and 49; Exhibit 4, at ¶¶ 12, 34, and 54-55; Exhibit 5, at ¶¶ 46 and 56; Exhibit 6, at ¶¶ 46 and 56.

Centralization of the FCA Rollaway Actions is appropriate for at least the following reasons: (1) the FCA Rollaway Actions involve common questions of fact; (2) transfer will aid

---

[2] *See Weber v. FCA US LLC*, No. 2:16-cv-12574 (E.D. Mich. July 8, 2016), ECF No. 1, attached hereto as Exhibit 3. Plaintiff has asserted claims on behalf of "All persons in the United States who purchased or leased one or more of the following Defective Vehicles: 2012-2014 Chrysler 300, 2012-2014 Dodge Ram, 2014-2015 Jeep Grand Cherokee, 2014 Maserati Quattroporte or 2014 Maserati Ghibli." *Id.* at ¶¶ 1 and 102.

the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of the Actions.  *See* 28 U.S.C. § 1407(a).  Moreover, transfer and centralization will eliminate the possibility of inconsistent pretrial rulings, including the certification of potentially overlapping classes against the same defendant.

If the Panel centralizes the Action, Plaintiff respectfully states that the Eastern District of Michigan is the ideal forum in which to coordinate pretrial proceedings.  The Eastern District of Michigan is FCA's home district and will be the evidentiary center for the Actions.  Defendant's decisions regarding design, manufacturing, marketing and sales of the Defective Vehicles emanated from Michigan.  Indeed, FCA describes its Auburn Hills, Michigan-based headquarters as "the world's only automotive headquarters where a vehicle can go from a sketch to a manufactured vehicle all under one roof."[3]  None of the other districts where the Actions are pending have the same evidentiary nexus to the litigation as the Eastern District of Michigan.

Even if the Eastern District of Michigan was not the evidentiary center of the Actions (it is), centralization in this district would nevertheless be appropriate given that the Eastern District of Michigan is geographically central to the Actions and offers very favorable docket statistics to ensure the speedy resolution of plaintiffs' claims.  *See In re Actos Prods. Liab. Litig.*, 840 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) (assigning litigation to experienced judge with "no other multidistrict litigation is pending"); *In re Dial Complete Mktg. & Sales Practices Litig.*, 804 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (selecting transferee judge with no other active multi-district litigation).

---

[3] FCA360 Staff, *Quality Is Everyone's Mission*, FCA (Oct. 15, 2015), http://www.fca360.com/ featured_news/quality-is-everyones-mission/.

Accordingly, Plaintiff respectfully requests the Panel centralize the FCA Rollaway Actions in the Eastern District of Michigan-Southern Division, where his case is currently pending before the Honorable Mark A. Goldsmith.

## II.   BACKGROUND FACTS

### A.   FCA Equipped at Least 811,586 Vehicles in the United States with the Defective Shifter and Failed to Remedy the Known Defect

This case involves egregious conduct by FCA, including selling the Defective Vehicles without disclosing a known defect which places drivers and occupants of the vehicles as well as the public at risk for serious injury or death.  Beginning in early 2011, FCA placed on the market over 800 thousand vehicles equipped with a monostable electronic gearshift which, unlike traditional automatic transmission shifters, returns to a central predetermined position after a driver switches gears.  The Defective Shifter does not move into a physical gear position like a traditional shifter but rather springs back to a neutral position after a driver selects a gear.  Thus, the only indication that a specific gear has been selected is that a light changes, i.e., when shifting from Drive to Park, the light changes from D to P.  There is no physical Park, Reverse, Neutral or Drive gear level, and there is no safety override function that puts the Defective Vehicles into Park if a driver attempts to exit the vehicle while it is in another gear.  The lack of a physical gear position that would clearly notify drivers regarding which gear their vehicle is in, in addition to FCA's failure to implement a safety override function, has led to hundreds of reports of vehicle rollaways when drivers thought their vehicles were in Park.  Indeed, consumer complaints to the National Highway Transportation Safety Administration ("NHTSA"), beginning at least as early as 2013, reveal that owners of the Defective Vehicles are often unable to determine whether their vehicle is in the desired gear—resulting in accidents, rollaways, and injuries.

4

As of February 2016, NHTSA's Office of Defects Investigation ("NHTSA-ODI") had identified over 300 incidents of vehicle rollaway and/or accidents following intended shifts to Park due to the Defective Shifter, including 121 incidents that resulted in crashes and 30 that involved injuries.[4]  Injuries included fractured pelvises, a ruptured bladder, a fractured kneecap, broken ribs, broken noses, facial lacerations requiring stitches, sprained knees, severe bruising and trauma to legs.[5]  As a result of NHTSA-ODI's investigation, it determined that the Defective Shifter "***appears to violate several basic design guidelines for vehicle controls***, such as: 1) be consistent; 2) controls and displays should function the way people expect them to function; 3) minimize what the user has to remember; and 4) operations that occur most often or have the greatest impact on driving safety should be the easiest to perform."[6]

Although FCA has known of the Defective Shifter and associated safety risks since shortly after certain of the Defective Vehicles were placed on the market in 2011, FCA failed to act within a reasonable time to stop the sale of Defective Vehicles and/or to timely notify Defective Vehicle owners of the defect.  Indeed, while continuing to sell the Defective Vehicles, FCA made repeated claims and advertisements touting its dedication to safety to boost sales of hundreds of thousands vehicles equipped with the Defective Shifter, and described certain of the

---

[4] Stephen Mchenry, Otto Matheke and Jeff Quandt, *ODI Resume Investigation EA 16-002*, OFFICE OF DEFECTS INVESTIGATION NATIONAL HIGHWAY SAFETY ADMINISTRATION (Feb. 3, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM497024/INOA-EA16002-6630.PDF (last visited Aug. 5, 2016).

[5] *See id.*

[6] Stephen Mchenry, Stephen Ridella and Jeff Quandt, *ODI Resume Investigation EA 16-002*, OFFICE OF DEFECTS INVESTIGATION NATIONAL HIGHWAY SAFETY ADMINISTRATION (June 24, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM528576/INCLA-EA16002-8352.PDF (last visited Aug. 5, 2016).

Defective Vehicles as "meeting the highest standard in terms of safety . . . ."[7]  FCA waited until April 22, 2016 to issue a recall for the Defective Vehicles and did not offer a remedy or repair for the Defective Shifter at the time.   Rather, FCA informed consumers that "a permanent remedy for this condition is currently under development."[8]

As a result of FCA's misrepresentations and omissions regarding the quality of the Defective Vehicles and the existence of the Defective Shifter, hundreds of thousands of consumers unknowingly purchased or leased the Defective Vehicles and have suffered diminished market value and other damages.  FCA's unlawful conduct also has exposed drivers, passengers and the public to the risk of vehicle rollaways, which can result in serious injury or death.

**B.    The FCA Rollaway Actions**

There are currently three actions pending in the Eastern District of Michigan and three other federal actions pending in three other federal courts seeking to hold FCA liable for, *inter alia*, its fraud, misrepresentations and concealment of the Defective Shifter and associated safety risks:

- *Deryl Wall et al. v. FCA US LLC*, No. 5:16-cv-01341, pending in the Central District, California (Hatter, J.) (filed on behalf of a nationwide class and subclasses) (a copy of the Complaint is attached as Exhibit 1);

- *Bruce Vosburgh v. FCA US LLC*, No. 2:16-cv-12571, pending in the Eastern District, Michigan (Goldsmith, J.) (filed on behalf of a nationwide class and subclass) (a copy of the Complaint is attached as Exhibit 2);

---

[7] The Group, *Brand Stories*, FCA GROUP, http://www.fcagroup.com/en-US/group/brand_stories/Pages/quality_lifecycle.aspx (last visited Aug. 5, 2016).

[8] FCA Fiat Chrysler Automobiles, *Transmission Electronic Shift Lever Important Safety Recall*, FCA (Apr. 22, 2016), available at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM519776/RCMN-16V240-2694.pdf (last visited Aug. 5, 2016).

- *Timothy Weber v. FCA US LLC*, No. 2:16-cv-12574, pending in the Eastern District, Michigan (Goldsmith, J.) (filed on behalf of a nationwide class and subclass) (a copy of the Complaint is attached as Exhibit 3);

- *Bernadine Hartt and Berardino D'Onofrio v. FCA US LLC*, No. 2:16-cv-12758, pending in the Eastern District of Michigan (Goldsmith, J.) (filed on behalf of nationwide class and subclass) (a copy of the Complaint is attached as Exhibit 4).

- *Janella Mack and Michael Cruz v. FCA US LLC*, No. 2:16-cv-04133, pending in the Eastern District, New York (Spatt, J.) (filed on behalf of a nationwide class and subclass) (a copy of the Complaint is attached as Exhibit 5);

- *Edith and Glen Harbin v. FCA US LLC*, No. 2:16-cv-00055, pending in the Middle District, Tennessee (Sharp, J.) (filed on behalf of a nationwide class and subclasses) (a copy of the Complaint is attached as Exhibit 6).

*See* Exhibit A.  The FCA Rollaway Actions are in their infancy and Defendant has not answered or moved to dismiss any of the complaints.  Rather, FCA has sought stays or requested extensions of time to respond to complaints in several of the actions.

The FCA Rollaway Actions are being pursued against a ***single common Defendant*** and challenge the ***same course of conduct*** by FCA.  The actions assert nearly identical or overlapping causes of action on behalf of overlapping nationwide classes of consumers who purchased or leased the Defective Vehicles.

## III.   ARGUMENT

### A.   Transfer and Centralization is Appropriate Under 28 U.S.C § 1407

Pursuant to 28 U.S.C. § 1407(a), transfer and centralization is appropriate where (1) the pending actions involve one or more common questions of fact; (2) transfer will aid the convenience of parties and witnesses; and (3) transfer will promote the just and efficient conduct of such actions.  "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."  MANUAL FOR COMPLEX LITIGATION

(FOURTH) § 20.131 (2016).   As discussed below, these factors weigh heavily in favor of centralization of the FCA Rollaway Actions in the Eastern District of Michigan.

The threshold requirement for centralization under 28 U.S.C. § 1407(a) is the existence of common factual questions among the FCA Rollaway Actions.   *See In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979) (finding transfer necessary in order to avoid duplication of discovery and prevent inconsistent pretrial rulings where the actions involved the same key factual inquiry).   Where the actions involve common questions, absolute uniformity of claims is not required.   *See In re Antibiotic Drugs*, 309 F. Supp. 155, 156 (J.P.M.L. 1970) ("Of course, the applicability of different legal principles will not prevent the transfer of an action under section 1407 if the requisite *common questions of fact* exist."); *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380, 1381 (J.P.M.L. 2004) ("transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer").

Here, the FCA Rollaway Actions arise from the same operative facts and assert common allegations based on Defendant's improper conduct, including that:

- The Defective Vehicles were equipped with a monostable electronic gearshift, which, unlike traditional automatic transmission shifters, returns to a central predetermined position after a driver switches gears.   *See* Exhibit 1, at ¶¶ 21-22; Exhibit 2, at ¶ 18; Exhibit 3, at ¶¶ 2 and 63; Exhibit 4, at ¶¶ 4-5, and 24; Exhibit 5, at ¶¶ 2 and 14; Exhibit 6, at ¶ 13.

- Unlike its competitors that also use monostable electronic gearshifts, FCA failed to install a safety override that would automatically place the car in Park when drivers attempt to exit the vehicle with the engine running and still in gear.   *See* Exhibit 1, at ¶ 22; Exhibit 2, at ¶ 19; Exhibit 3, at ¶¶ 2, 3 and 40; Exhibit 4, at ¶¶ 7 and 25; Exhibit 5, at ¶15; Exhibit 6, at ¶ 14.

- FCA knew of the defect, yet it chose to not disclose it to consumers and vehicle owners, while contemporaneously touting its dedication to ensuring driver safety. *See* Exhibit 1, at ¶¶ 14 and 32; Exhibit 2, at ¶¶ 28-30; Exhibit 3, at ¶¶ 8 and 63; Exhibit 4, at ¶¶ 9-10, and 36; Exhibit 5, at ¶¶ 11 and 25; Exhibit 6, at ¶¶ 10 and 24.

- FCA's conduct exposed Defective Vehicle owners, passengers and the public to risk of serious injury or death.  *See* Exhibit 1, at ¶ 8; Exhibit 2, at ¶ 8; Exhibit 3, at ¶¶ 2, 9 and 49; Exhibit 4, at ¶ 12; Exhibit 5, at ¶ 12; Exhibit 6, at ¶¶ 3 and 5.

- As a result of FCA's conduct, Defective Vehicle owners have suffered a diminution in their vehicle's value, as well as other damages.  *See* Exhibit 1, at ¶¶ 6-7; Exhibit 2, at ¶¶ 40-42; Exhibit 3, at ¶¶ 15 and 50; Exhibit 4, at ¶¶ 10-11; Exhibit 5, at ¶¶ 5 and 60; Exhibit 6, at ¶¶ 5 and 59.

In addition to arising under the same common set of facts, the FCA Rollaway Actions assert common, overlapping claims and legal theories[9] on behalf of overlapping nationwide classes.[10]  Thus, centralization of the FCA Rollaway Actions is necessary to prevent inconsistent pretrial rulings and overlapping class determinations.  *See In re U. S. Fin. Sec. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) ("the prevalence of common factual issues and similar class

---

[9] *See* Exhibit 1 (¶¶ 130 – 35, Breach of Warranty; ¶¶ 95 – 100, Breach of Implied Warranty of Merchantability; ¶¶ 79 - 86, Violation of the Magnuson-Moss Warranty Act)*;* Exhibit 2 (¶¶ 96 – 108, Breach of Express Warranty; ¶¶ 109 – 14, Breach of Implied Warranty of Merchantability; ¶¶ 65 – 78, Violation of the Magnuson-Moss Warranty Act; ¶¶ 115 – 23, Unjust Enrichment); Exhibit 3 (¶¶ 130 – 35, Breach of Contract; ¶¶ 136 – 52, Breach of Express Warranty; ¶¶ 153 – 66, Breach of Implied Warranty of Merchantability; ¶¶ 167 – 82, Violation of the Magnuson-Moss Warranty Act; ¶¶ 183 – 89, Unjust Enrichment); Exhibit 4 (¶¶ 111 – 14, Breach of Contract; ¶¶ 90 – 105, Breach of Express Warranty; ¶¶ 106 – 10, Breach of Implied Warranty of Merchantability; ¶¶ 69 – 82, Violation of the Magnuson-Moss Warranty Act; ¶¶ 115 – 22, Unjust Enrichment); Exhibit 5 (¶¶ 47- 60, Violation of Magnuson-Moss Warranty Act); Exhibit 6 (¶¶ 74 – 82, Breach of Express Warranty; ¶¶ 83 – 93, Breach of Implied Warranty; ¶¶ 47 – 59, Violation of the Magnuson-Moss Warranty Act).

[10] *See* Exhibit 1, at ¶¶ 2 and 55 (asserting claims on behalf of "All persons or entities who purchased or leased a 2012-14 Dodge Charger, 2012-14 Chrysler 300, or 2014-15 Jeep Grand Cherokee"); Exhibit 2, at ¶¶ 2 and 55 (asserting claims on behalf of "All persons or entities who purchased or leased a 2012-2014 Dodge Charger, 2012-2014 Chrysler 300, 2014-2015 Jeep Grand Cherokee, or 2014 Maserati Quattroporte or Ghibli"); Exhibit 3, at ¶¶ 1 and 102 (asserting claims on behalf of "All persons in the United States who purchased, leased or own a 2012-2014 Chrysler 300, 2012-2014 Dodge Ram, 2014-2015 Jeep Grand Cherokee, 2014 Maserati Quattroporte or 2014 Maserati Ghibli"); Exhibit 4, at ¶¶ 4, 58 (asserting claims on behalf of "All persons or entities who purchased or leased a 2012-14 Dodge Charger, 2012-2014 Chrysler 300, 2014-15 Jeep Grand Cherokee, or 2014 Maserati Quattroporte or Ghibli"); Exhibit 5, at ¶¶ 2 and 35 (asserting claims on behalf of "All persons in the United States who purchased or leased a 2014-15 Jeep Grand Cherokee, 2012-14 Dodge Charger, or 2012-14 Chrysler 300"); Exhibit 6, at ¶¶ 2 and 35 (asserting claims on behalf of "All persons in the United States who purchased or leased a [2014-15 Jeep Grand Cherokee, 2012-14 Dodge Charger, or 2012-14 Chrysler 300]").

allegations necessitates transfer of all actions to a single district for coordinated or consolidated pretrial proceedings under Section 1407 in order to prevent duplication of discovery and eliminate the possibility of inconsistent or overlapping class determinations"); *In re Pilot Flying J Fuel Rebate Contract Litig.*, 11 F. Supp. 3d 1351,1352 (J.P.M.L. 2014) ("Centralization will avoid repetitive depositions of [defendant's] officers and employees and duplicative document discovery regarding the alleged scheme.").

### B.    The Eastern District of Michigan Is the Ideal Forum for Centralization

In deciding which is the most appropriate forum for centralization under 28 U.S.C. § 1407, the Panel considers, *inter alia*, "the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2016).  Based on these factors, the Eastern District of Michigan is the ideal forum for centralization of the FCA Rollaway Actions.

### 1.    The Unlawful Conduct Occurred in the Eastern District of Michigan

The FCA Rollaway Actions have a strong geographic nexus to the Eastern District of Michigan because the unlawful conduct emanated from the district.  *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 403 F. Supp. 2d 1358, 1360  (J.P.M.L. 2005) (finding the Eastern District of Michigan is an appropriate forum because the district has a significant nexus to the litigation).  The sole Defendant in each of the Actions—FCA—is headquartered in Auburn Hills, Michigan, which is located within the Eastern District of Michigan.  *See In re Auto. Wire Harness Sys. Antitrust Litig.*, 844 F. Supp. 2d 1367, 1367-68 (J.P.M.L. 2012) (finding the Eastern District of Michigan "the most appropriate transferee district" where several defendants were located in the district).  The location of Defendant's headquarters within the Eastern District of Michigan provides easy access to critical documents and witnesses central to the

litigation and common to the FCA Rollaway Actions. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (transferring to the district where defendant maintains its corporate headquarters and "relevant documents and witnesses are likely located there").

Further, FCA designs, engineers, manufactures and sells vehicles under the Chrysler, Jeep, Dodge, Ram, Fiat and Maserati brands in the Eastern District of Michigan. According to FCA, "[m]uch of the vehicle development process occurs at the Chrysler Technology Center (CTC) in the Auburn Hills, the Michigan–based headquarters for FCA US."[11]  FCA's Michigan-based headquarters—which include "its main research and development facility"—is "one of the largest freestanding business complexes in the world, second only to the Pentagon":[12]



---

[11] *Id.*

[12] Our Locations, FCA, available at http://www.fcagroupcareers.com/OurBusiness/OurLocation/Pages/home.aspx (last visited Aug. 4, 2016); http://image.motortrend.com/f/corporate/chrysler-plans-a-two-week-vacation/8318292 +cr1+re0+ar1/chrysler-headquarters.jpg (source for picture, last visited Aug. 5, 2016).

The Company describes its significant activities at its headquarters in the Eastern District of Michigan as follows:

> With approximately 14,000 employees under one roof, it is the only automotive headquarters in the world where vehicles can go from the sketch stage to prototype vehicles that are manufactured and subjected to extensive engine, driveline durability and performance testing as well as wind tunnel aerodynamic/acoustic development and extreme weather validation all under one roof. . . . The thousands of simulated and laboratory tests conducted at CTC set the foundation for the regimented reliability, capability and durability testing that continues at FCA's proving grounds around the world. . . . Quality development at FCA US prioritizes customers' needs with the goal of designing and building vehicles owners will be proud to recommend to their friends and family.[13]

Indeed, FCA is committed to its continued presence and manufacturing activities in the Eastern District of Michigan.  In July 2016, FCA announced its intention to "spend $1.49 billion to retool its Sterling Heights Assembly Plant"—located approximately forty minutes from the Eastern District of Michigan federal courthouse in Detroit—so it can build next-generation vehicles there.[14]

Given the substantial activities that occur at FCA's headquarters in Michigan, FCA's fraudulent scheme to conceal the Defective Shifters and associated safety risk emanated from Michigan and numerous factual issues will be answered by documents and witnesses located within the district.  *See In re GMC Sec. & Derivative Litig.*, 429 F. Supp. 2d 1368, 1370 (J.P.M.L. 2006) (centralizing five actions in the Eastern District of Michigan and finding the Eastern District of Michigan "an appropriate forum" because the "district is where many relevant documents and witnesses are likely to be found, inasmuch as GM's principal place of business is

---

[13]   FCA360 Staff, *Quality Is Everyone's Mission*, FCA (Oct. 15, 2015), http://www.fca360.com/featured_news/quality-is-everyones-mission/.

[14] Brent Snavely & Matt Dolan, *Fiat Chrysler to Invest $1.49 Billion in Sterling Heights Plant,* DETROIT FREE PRESS, July 26, 2016.

located there").  Thus, the Eastern District of Michigan is the appropriate transferee forum based on its strong connection to the FCA Rollaway Actions.

### 2. Cost and Inconvenience Will Be Minimized in the Eastern District of Michigan

In addition to its proximity to critical documents and witnesses, the Eastern District of Michigan federal courthouse in Detroit, Michigan—where the Honorable Mark A. Goldsmith presides—is a central, convenient location for the parties, counsel and witnesses.  *See In re Rio Hair Naturalizer Prods. Liab. Litig.,* 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) (finding the Eastern District of Michigan the appropriate transfer forum because, *inter alia*, it "provides a geographically central location for this nationwide litigation").  The courthouse is located 22.1 miles from the Detroit Metropolitan Wayne County Airport ("Detroit Metro")—one of the largest air transportation hubs in the country.  Detroit Metro provides transportation to 160 domestic and international destinations, and is serviced by thirteen major airlines, including: Air Canada, Air France, Alaska Airlines, American Airlines, Delta, Frontier, Jet Blue, Lufthansa, Royal Jordanian, Southwest, Spirit Airlines, United, and Virgin Atlantic.[15]  Thus, the courthouse is easily accessible and cost and inconvenience will be minimized if the FCA Rollaway Actions are centralized in the Eastern District of Michigan.

### 3. The Eastern District of Michigan Has the Resources, Judicial Expertise and Favorable Caseload to Conduct Efficient Pretrial Proceedings

The Eastern District of Michigan has the judicial expertise, resources and favorable caseload to conduct efficient pretrial proceedings in the FCA Rollaway Actions.  *See In re Battlefield Waste Disposal Litig.*, 655 F. Supp. 2d 1374, 1375 (J.P.M.L. 2009) (transferring

---

[15] *See* Airlines, Detroit Metro Airport, http://www.metroairport.com/Airlines.aspx (last visited Aug. 4, 2016).

actions to an "experienced transferee judge who has a caseload favorable to accepting this assignment"). The district currently has a favorable caseload and a limited number of multi-district litigations (three), with none pending before Judge Goldsmith.[16] *See, e.g., In re Refined Petroleum Prods. Antitrust Litig.*, 528 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007) (transferring to a district with "favorable caseload conditions"). In fact, the Panel already has recognized that the Eastern District of Michigan is a desirable transferee forum due to its favorable caseload conditions. *See In re Packaged Ice Antitrust Litig.*, 560 F. Supp. 2d at 1361 (finding the Eastern District of Michigan an "appropriate transferee district for pretrial proceedings" because the district is geographically central and offers "favorable caseload conditions").

With regard to technology, the Eastern District of Michigan courtrooms are designed to accommodate large multi-party hearings and trials and are outfitted with video drops to allow mobile video conference carts to connect, flip-up touch screen monitors at attorney tables, large screen evidence displays for jury viewing, evidence touch screen displays for witness box and digital audio with hearing impaired assistance.[17]

The Honorable Mark A. Goldsmith, who is presiding over the actions in the Eastern District of Michigan, practiced complex commercial litigation for esteemed New York and Detroit-area law firms for nearly 25 years before being appointed as a federal judge. *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg. Sales Practices & Prods. Liab. Litig.*, 704 F. Supp. 2d at 1382 (finding the transferee judge's "years of private law practice at the very highest levels and in some of the most complex cases leaves him well prepared for a case of this

---

[16] *See* Statistics & Reports, Data Tables, *U.S. District Courts – Federal Court Management Statistics – Profiles*, U.S. Courts, http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited Aug. 5, 2016).

[17] *See United States District Court for the Eastern District of Michigan – 2013 Courtroom Technology Update*, available at https://www.mied.uscourts.gov/PDFFIles/courtroomTechnology.pdf (last visited Aug. 5, 2016).

magnitude").  Judge Goldsmith is highly qualified to preside over the complex issues raised by the FCA Rollaway Actions.  *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.,* No. 1373, 2000 U.S. Dist. LEXIS 15926, at *8 (J.P.M.L. Oct. 24, 2000) ("we have searched for a transferee judge with the ability and temperament to steer this complex litigation on a steady and expeditious course").

Finally, while the Eastern District of Michigan has experience overseeing complex multi-district litigation, *see e.g., Packaged Ice*, 560 F. Supp. 2d at 1361, there are only three multi-district litigations pending in the district and none are currently before Judge Goldsmith.[18]  As such, the court will have the necessary resources to conduct pretrial proceedings in the FCA Rollaway Actions in a just and efficient manner.  *See In re UnumProvident Corp. Secs., Derivative, & "ERISA" Litig*., 280 F. Supp. 2d 1377, 1380 (J.P.M.L. 2003) (selecting transferee forum where no other multidistrict litigation was pending).

## IV.   CONCLUSION

The Eastern District of Michigan offers a geographical nexus to the factual allegations in the FCA Rollaway Actions, centrality, judicial management and expertise.  In addition, the district's favorable caseload, including a limited number of pending multi-district litigations, with none before Judge Goldsmith, weighs heavily in favor of centralization of the FCA Rollaway Actions in the Eastern District of Michigan.  For the foregoing reasons, Plaintiff Timothy Weber respectfully requests that the FCA Rollaway Actions, and any related actions

---

[18]  Panel Info, Statistics, Fiscal Year 2015, JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, available at http://www.jpml.uscourts.gov/sites/jpml/files/JPML_Statistical_Analysis_of_Multidistrict_Litigation-FY-2015_0.pdf  (last visited Aug. 5, 2016).

subsequently filed in, or removed to federal court, be transferred and consolidated for pretrial

proceedings in the Eastern District of Michigan pursuant to 28 U.S.C. § 1407.

Dated: August 5, 2016                                   Respectfully submitted,

                                                      **KESSLER TOPAZ**
                                                      **MELTZER & CHECK, LLP**

                                                      */s/ Joseph H. Meltzer*
                                                      Joseph H. Meltzer
                                                      Peter A. Muhic
                                                      Melissa L. Troutner
                                                      280 King of Prussia Road
                                                      Radnor, PA 19087
                                                      Telephone: (610) 667-7706
                                                      Facsimile: (610) 667-7056
                                                      jmeltzer@ktmc.com
                                                      pmuhic@ktmc.com
                                                      mtroutner@ktmc.com

                                                      **THE MILLER LAW FIRM, P.C.**
                                                      E. Powell Miller
                                                      Sharon S. Almonrode
                                                      950 West University Drive, Suite 300
                                                      Rochester, MI 48307
                                                      Telephone: (248) 841-2200
                                                      Facsimile: (248) 652-2852
                                                      epm@millerlawpc.com
                                                      ssa@millerlawpc.com

                                                      ***Counsel for Plaintiff in the***
                                                      ***Weber v. FCA US LLC Action,***
                                                      E.D. Michigan, No. 16-cv-12574-MAG-
                                                      DRG